IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARCELORMITTAL PLATE, LLC, : | |
| Plaintiff, : | CIVIL ACTION |
| : | |
| v. : | |
| : | |
| JOULE TECHNICAL : | |
| SERVICES, INC., et al., : | No. 11-6873 |
| Defendants. : | |

# MEMORANDUM

Schiller, J.                                                                                                                                                                        December 20, 2012

This action stems from an injury sustained by William Greene on January 12, 2008. Before the Court are cross-motions for summary judgment from Plaintiff, ArcelorMittal Plate, LLC ("ArcelorMittal") and Defendants Joule Technical Services, Inc. ("Joule"), Liberty Surplus Insurance Corporation ("Liberty"), and Genatt Associates, Inc. ("Genatt"). For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment and grants Defendants' motions for summary judgment.

## I.    BACKGROUND

###    A.    Parties

Plaintiff owns and operates a steel production facility (the "Conshohocken Plant"). (Def. Genatt's Statement of Material Facts [Genatt's SOF] ¶ 2.) Joule provides temporary staffing for industrial facilities. (Joule's Statement of Uncontested Facts [Joule's SOF] ¶ 2.) Liberty underwrote Joule's commercial general liability policy ("Liberty policy") and insurance broker Genatt issued a certificate of liability insurance, which represented that Plaintiff was an additional insured on the Liberty policy. (Pl.'s Statement of Undisputed Facts [Pl.'s SOF] ¶ 30; Genatt's Mot. for Summ. J.

Ex. A [Certificate of Liab. Ins.].)

**B.  Contractor Agreement**

On October 17, 2005, Joule entered a contract ("Contractor Agreement") with ISG Plate LLC, the name used by Plaintiff prior to 2007. (Pl.'s SOF ¶ 12; Pl.'s Mot. for Summ. J. Ex. F [Contractor Agreement] at 2.) The Contractor Agreement obligated Joule to indemnify Plaintiff "for losses, claims damages or any other liability caused by [Joule's] negligent or intentional acts or omissions and, not against any negligent or intentional acts or omissions of the [Plaintiff]." (Contractor Agreement ¶ 2(b)(xii).) The Contractor Agreement also specified that, in the event of any inconsistency between the Contractor Agreement and other documents, such as purchase orders, the Contractor Agreement would govern. (*Id.* ¶ 2(b)(xxii).)

The Contractor Agreement also incorporated the majority of another document, the General Terms and Conditions for Agreements ("General Terms and Conditions"). (*Id.* ¶ 1.) The General Terms and Conditions stated that Joule must provide and pay for certain insurance policies, and that on such insurance policies Plaintiff "shall be added as an additional insured." (Pl.'s Mot. for Summ. J. Ex. F at 7 [General Terms and Conditions] § 16.)

**C.  Greene Injuries and Lawsuit**

On January 12, 2008, several employees supplied by Joule, including William Greene, reported to Plaintiff's Conshohocken Plant to perform maintenance services. (Pl.'s SOF ¶ 56.) While descending a ladder at the Conshohocken Plant, Greene fell and injured himself. (*Id.* ¶ 70.) On September 16, 2009, Greene and his wife sued ArcelorMittal. (*Id.* ¶ 79.) On September 29, 2011, a jury found Plaintiff negligent and awarded Greene $1,000,000. (Pl.'s Mot. for Summ. J. Ex. II [Verdict Sheet].)

2

### D. Purchase Orders and AMUSA-100

After Joule provided staffing to Plaintiff, Joule would send invoices for those services. (Joule's SOF ¶ 60.) Plaintiff would then send payment and a purchase order, which described the services provided by Joule. (Pl.'s SOF ¶ 24.) The purchase order covering Greene's services was sent on February 11, 2008 and stated that "Purchase Order (AMUSA-100) appl[ies] to this Order." (Liberty's Mot. for Summ. J. Ex. D [Invoice].) Plaintiff claims that, unlike the Contractor Agreement, the AMUSA-100 required Joule to indemnify Plaintiff for all claims for bodily injury made by Joule's employees as a result of work done at the Conshohocken Plant, even if such injuries were caused by Plaintiff's negligence. (*See* Pl.'s Mot. for Summ. J. Ex. K [Purchase Order Agreement] § 12.3.)

### E. General Liability Insurance on January 12, 2008

Liberty was the general liability insurance carrier for Joule when Greene was hurt. (*See* Liberty's Mot. for Summ. J. Ex. Q [Liberty Policy].) The Liberty policy was modified by numerous endorsements. One such endorsement amended Section II, titled "WHO IS AN INSURED," to "include as an insured any person or organization with whom you have agreed to add as an additional insured by written contract." (*Id.* at Endorsement No. 1.)

The Liberty policy also contained multiple exceptions that limited coverage. For example, one exception stated that "[t]his insurance does not apply to . . . 'bodily injury' to . . . an 'employee' of the insured arising out of and in the course of . . . [e]mployment by the insured[] or performing duties related to the conduct of the insured's business . . . ." (*Id.* at Commercial Gen. Liab. Coverage Form.) The exception clarifies that "[t]his exclusion does not apply to liability assumed by the insured under an 'insured contract.'" (*Id.*) "Insured contract" is defined to include "part of any other

3

contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury.'" (*Id.*)

F. **Demand for Indemnity**

On January 6, 2011, Plaintiff sent a letter demanding indemnity from Joule for the Greene litigation and citing the AMUSA-100. (Pl.'s Mot. for Summ. J. Ex. AA [Indemnity Demand].) That letter was forwarded to Liberty on February 2, 2011. (Liberty's SOF ¶ 19.) Liberty responded on February 9, 2011, denying Plaintiff's request for indemnification because Liberty's "investigation revealed there was no contract in existence between Arcelor Mittal Steel and Joule, Inc. for the date of loss of January 12, 2008." (Pl.'s Mot. for Summ. J. Ex. EE [Liberty Indemnity Response].) On November 2, 2011, Plaintiff sued Defendants, seeking indemnification for the Greene litigation.

II. **LEGAL STANDARD**

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Abramson v. William Paterson Coll.*

4

*of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002). A court must apply the same standards to cross-motions for summary judgment. *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).

## III. DISCUSSION

### A. Contractor Agreement Applies

The Amended Complaint is unclear as to which contract applies to Plaintiff's claims, as it cites both the Contractor Agreement and AMUSA-100. However, in later filings Plaintiff and Joule concede that the Contractor Agreement governs. (*See* Pl.'s SOF ¶ 20 ("The ISG Agreement was the agreement that was in effect and governed the relationship . . . ."); Response of Joule to Pl.'s SOF.) The Court agrees. Although Plaintiff appears to have abandoned the argument, to the extent that any party argues that the language on the purchase order constituted a new contract or a modification to the Contractor Agreement, the Court rejects this argument. "Unilateral statements or actions made after an agreement has been reached or added to a completed agreement clearly do not serve to modify the original terms of a contract." *Cnty. of Morris v. Fauver*, 707 A.2d 958, 967 (N.J. 1998); *see also McIntyre Square Assocs. v. Evans*, 827 A.2d 446, 461 (Pa. Super. Ct. 2003). The purchase order failed to modify the Contractor Agreement or create a new contract for four reasons.

First, Plaintiff sent the purchase order after the incident occurred. Greene was injured at the Conshohocken Plant on January 12, 2008. The purchase order asserting that the AMUSA-100 applied for Greene's work was not sent by Plaintiff until nearly a month later, on February 11, 2008.

5

(*See* Invoice.) Second, the purchase order was, at best, a unilateral attempt by Plaintiff to modify the terms of the Contractor Agreement pertaining to indemnification. Plaintiff has failed to produce any information, such as a signed copy of the AMUSA-100 or purchase order, that would allow the Court to find mutual agreement to a modification of the Contractor Agreement. Third, the Contractor Agreement explicitly states that "[i]n the event of any inconsistency between any provisions in any other Contract Documents and the modifications listed herein, the modifications listed herein shall govern." (Contractor Agreement ¶ 2(b)(xxii).) Therefore, even if the Court found parts of the AMUSA-100 applicable, the portion requiring Joule to indemnify Plaintiff for its negligent acts must be ignored, as it is inconsistent with the Contractor Agreement. Lastly, the General Terms and Conditions set forth specific procedures that the parties had to follow to amend the General Terms and Conditions or Contractor Agreement, including that the modifications must be "made in a writing which both (i) states that it amends the Contract and (ii) is signed by an authorized representative of [Plaintiff and Joule]." (General Terms and Conditions § 32(a).) None of the aforementioned conditions for modifying the Contractor Agreement were fulfilled. For these reasons, the Court finds that the Contractor Agreement governs this case.

### B. Claims Against Joule

#### 1. *Breach of contract for failure to defend and indemnify*

Plaintiff claims that Joule breached the purchase order agreement by refusing to defend and indemnify Plaintiff. However, as stated above, Plaintiff's right to indemnification was governed by the Contractor Agreement, not the subsequent purchase order. The Contractor Agreement required Joule to indemnify Plaintiff "for losses, claims damages or any other liability caused by [Joule's] negligent or intentional acts or omissions and, not against any negligent or intentional acts or

omissions of the [Plaintiff]." (Contractor Agreement ¶ 2(b)(xii).) Because Greene's injuries resulted from Plaintiff's negligence, Joule is under no obligation to indemnify Plaintiff. (*See* Verdict Sheet.)

2. *Breach of contract and fraud for failure to include ArcelorMittal as an additional insured on the policy*

The Contractor Agreement, through its incorporation of the General Terms and Conditions, specified that Plaintiff "shall be added as an additional insured" on Joule's commercial general liability insurance, which at the time of Greene's injuries was the Liberty policy. (General Terms and Conditions § 16(b).) The Liberty policy explicitly stated that it was amended "to include as an insured any person or organization with whom you have agreed to add as an additional insured by written contract." (Liberty Policy at Endorsement No. 1.) Because Joule agreed, through the Contractor Agreement, to designate Plaintiff as an additional insured on its commercial general liability insurance, the Court finds that Plaintiff was an additional insured on the Liberty policy. Therefore, Plaintiff's breach of contract and fraud claims fail.

### C. Claims Against Genatt

The Amended Complaint claims that Genatt committed fraud when it misrepresented that Plaintiff was an additional insured on the Liberty policy. As stated above, the Court finds that Plaintiff was named as an additional insured on the Liberty policy. Therefore, there was no misrepresentation and the Court dismisses the claim against Genatt.

### D. Claims Against Liberty

1. *Applicable law for interpretation of Liberty policy*

Plaintiff argues that, if it is an additional insured on the Liberty policy, Liberty must indemnify Plaintiff. As an initial matter, the parties disagree about whether Pennsylvania or New

7

Jersey law applies to interpret the Liberty policy. As a federal court sitting in diversity, the Court must apply the choice-of-law rules of the forum state, Pennsylvania. *See Pac. Emp'rs Ins. Co. v. Global Reins. Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012). The first step in choice-of-law analysis is to identify the jurisdictions whose laws might apply. *Id.* Here, Joule argues that Pennsylvania law applies and Plaintiff argues that New Jersey law applies. (*See* Joule's Mot. for Summ. J. at 4-6; Pl.'s Response to Joule's Mot. for Summ. J. at 20.) Next, the Court "must determine the substance of these states' laws, and look for actual, relevant differences between them" because if both states' laws are substantively the same, then choice-of-law analysis is unnecessary. *Id.*

This case involves the straightforward application of clear contractual language. The laws of both states agree that when "the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties." *Kampf v. Franklin Life Ins. Co.*, 161 A.2d 717, 720 (N.J. 1960); *see also Williams v. GEICO Gov't Emps. Ins. Co.*, 32 A.3d 1195, 1211 (Pa. 2011) ("As a general proposition, a court must give plain meaning to an insurance contract's clear and unambiguous language unless to do so would be contrary to a clearly expressed public policy."). Additionally, both states agree that as an additional insured, Plaintiff is subject to the same policy limitations as Joule. *See Fire & Cas. Co. of Conn. v. Cook*, 155 F. App'x 587, 591 n.7 (3d Cir. 2005) ("Cook, as an additional insured, is a third-party beneficiary [and therefore] bound by the same limitations in the contract as the signatories . . . ." (citing *Gen. Accident Ins. Co. of Am. v. Parker*, 665 A.2d 502, 504 (Pa. Super. Ct. 1995))); *see also Velkers v. Glens Falls Ins. Co.*, 226 A.2d 448, 453 (N.J. Super. Ct. Ch. Div. 1967) ("An additional insured (one other than the named insured) under a policy of insurance is required to comply with the conditions

of the policy in the same manner as the named insured." (citing *Costanzo v. Penn. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 152 A.2d 589, 594 (N.J. 1959))). As explained further below, because the states' substantive law is the same, it is unnecessary to determine whether Pennsylvania or New Jersey law applies.

### 2. *Breach of contract against Liberty for failure to defend and indemnify*

Plaintiff argues that, as an additional insured on the Liberty policy, Liberty must indemnify Plaintiff for the damages it suffered as a result of the Greene litigation. The Court disagrees based on unambiguous language in the Liberty policy. The Liberty policy contains an exclusion which states that "[t]his insurance does not apply to . . . 'bodily injury' to . . . an 'employee' of the insured arising out of and in the course of . . . [e]mployment by the insured[] or performing duties related to the conduct of the insured's business." (Liberty Policy at Commercial Gen. Liab. Coverage Form.) "Insured" is defined as "any person or organization qualifying as such under SECTION II." (*Id.*) Section II includes as an insured both Joule and "any person or organization with whom you have agreed to add as an additional insured by written contract." (*Id.* at Endorsement No. 1.) Because both Joule and Plaintiff are included in the definition of "insured," the employee exclusion effectively reads "[t]his insurance does not apply to . . . 'bodily injury' to . . . an 'employee' of [Joule or Plaintiff] arising out of and in the course of . . . [e]mployment by [Joule or Plaintiff]." The language in the Liberty policy is not ambiguous. It excludes coverage when the injured party is an employee of Joule or Plaintiff. Because the facts support, and all parties concede that Greene was an employee of Joule or Plaintiff, the Liberty policy does not apply.

Contrary to the plain language of the policy, Plaintiff argues that the term "insured" is ambiguous. To support this proposition, Plaintiff cites two New Jersey cases, both of which are

9

distinguishable. The first case, *Maryland Casualty Co. v. New Jersey Manufacturers Casualty Insurance Co.*, 145 A.2d 15 (N.J. 1958), involved different contractual provisions than those at issue here. In *Maryland Casualty*, the New Jersey Supreme Court affirmed the Appellate Division's decision that "the insured" in a similar employee exception provision meant the insured party who was being sued only, and that the exclusion required an employer-employee relationship between the party being sued and the injured party in order to apply. *Id.* at 16-17. However, to reach that conclusion, the lower court highlighted that the provision which defined "the insured" to include additional insured parties was distinct and separate from the exclusions section of the contract. *See Md. Cas. Co. v. N.J. Mfrs. Ins. Co.*, 137 A.2d 577, 583 (N.J. Super. Ct. App. Div. 1958). The Appellate Division reasoned that "[t]he identity of the insured intended to be excluded from the benefits of coverage . . . must be sought within the perimeter and language of the exclusion clauses." (*Id.*) The Liberty policy, however, defines "insured" in the same portion of the policy as the exclusions. On the first page of the Commercial General Liability Coverage Form, in the introduction preceding the exclusions section, the Liberty policy states that "[t]he word 'insured' means any person or organization qualifying as such under SECTION II." (Liberty Policy at Commercial Gen. Liab. Coverage Form.) The employee exclusion is located on the next page of the Commercial General Liability Coverage Form. (*Id.*) Likewise, the Liberty policy states that the employee exclusion applies "[w]hether the insured may be liable as an employer or in any other capacity." (*Id.*) This contemplates a situation where this exception may arise outside of the employer-employee relationship. Lastly, in upholding the Appellate Division's decision in *Maryland Casualty*, the New Jersey Supreme Court highlighted another provision in the contract which would have been made superfluous if "insured" was read to mean both the primary and additional insured parties. *See*

*Maryland Casualty*, 145 A.2d at 17. The Plaintiff has not argued that such a provision exists in the Liberty policy. Therefore, this also cuts against Plaintiff's argument that the contractual language is ambiguous.

The second New Jersey case cited by Plaintiff involved an application of the *Maryland Casualty* case. *See Erdo v. Torcon Constr. Co., Inc.*, 645 A.2d 806, 809-10 (N.J. Super. Ct. App. Div. 1994). Because this Court finds *Maryland Casualty* distinguishable, it finds *Erdo* distinguishable on the same grounds. Additionally, in *Erdo* the court read the employee exclusion to require an employer-employee relationship because it found that the "primary objective" of the employee exclusion provision at issue in that case was "to avoid duplication of coverage with an employer's workers' compensation coverage" and that "[i]f the insurer wishes to further exclude its liability, it could clearly so state in its contract . . . ." *Erdo*, 645 A.2d at 810. However, the Liberty policy language made clear, in two ways, that the purpose of the employee exclusion in this case was not merely to avoid duplication with workers' compensation coverage. First, the employee exclusion explicitly states that the exclusion applies "[w]hether the insured may be liable as an employer or in any other capacity." (Liberty Policy at Commercial Gen. Liab. Coverage Form.) Second, the Liberty policy separately excludes "any obligation of the insured under a workers compensation . . . law." (*Id.*) This provision would be rendered superfluous if the employee exclusion was tied to obligations under workers' compensation laws.

Because the language in the Liberty policy employee exclusion is clear and "insured" should be read, as defined, to include the primary insured and additional insured, the Court finds that Greene's injuries fell within the Liberty policy's employee exclusion. Such a result is consistent with both Pennsylvania and New Jersey law. Therefore, the Court grants summary judgment for Liberty

11

on the breach of contract claim.

### 3. Bad faith against Liberty

Plaintiff argues that Liberty denied Plaintiff's claim for indemnification in bad faith. Specifically, the Amended Complaint alleges that Liberty violated its duty to Plaintiff by "refusing to acknowledge Liberty's obligations to defend and indemnify ArcelorMittal" and "by taking positions concerning the existence and terms of the Contractor Agreement and Purchase Order Agreement between ArcelorMittal and Joule that have no valid or good-faith basis in fact or law." (Am. Compl. ¶ 93.) Under both Pennsylvania and New Jersey law, to prove bad faith, a plaintiff must show that the insurer did not have a reasonable basis for denying benefits under the policy. *See Lydon v. Chubb Grp. of Ins. Cos.*, Civ. A. No. 1671-05, 2012 WL 3731811, at *12 (N.J. Super. Ct. App. Div. Aug. 30, 2012); *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006).

The Court dismisses this claim for two reasons. First, Plaintiff is not entitled to coverage under the Liberty policy, and therefore Plaintiff cannot argue that Liberty "refus[ed] to acknowledge Liberty's obligations to defend and indemnify" Plaintiff. (*See* Am. Compl. ¶ 93.) Second, in its claim letter, Plaintiff cited the purchase order and AMUSA-100 as the basis for its claim. (*See* Indemnity Demand.) Based on the Court's finding that the purchase order and AMUSA-100 do not require Liberty to indemnify Plaintiff, the Court finds that Liberty did not act in bad faith when it denied Plaintiff's claim.

## IV. CONCLUSION

In light of the foregoing, Defendants' motions for summary judgment are granted and

Plaintiff's motion for summary judgment is denied. An Order consistent with this Memorandum will be docketed separately.